<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DARRELL BLOUNT, | : | Civil Action No. 19-409 (JMV) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BRUCE DAVIS, | : | |
| | : | |
| Respondent. | : | |

**VAZQUEZ, District Judge:**

Petitioner is a state prisoner currently incarcerated at New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.E. 1.) For the reasons explained in this Opinion, the Court will deny the Petition and will not issue a certificate of appealability.

**I.    BACKGROUND**

The New Jersey Superior Court, Appellate Division summarized the underlying circumstances of this case on direct appeal:

> We discern the following facts from the testimony at trial. On April 21[,] 2007, a man entered a liquor store in Roselle Park shortly before 10:00 a.m. After walking around the store for a few minutes, he approached the counter, asked the store cashier for a six-pack of beer, then pulled out a handgun and demanded money from the register. The robbery victim refused and hit the panic alarm button. The robber immediately fled. The victim ran after him and observed the robber get into a silver Dodge Neon.
>
> The Roselle Police arrived a few minutes later. The victim told the police that the robber was an African American man, between 30 and 40 years old, with a medium build, about five-feet-eight to five-feet-ten, wearing a green shirt, blue pants, a hat, and carrying a blue

bag. He also described the gun and provided the robber's license plate number.

After determining that the suspect's car was registered to an Edison resident, the police contacted Edison police for assistance. Within minutes, the Edison police located the vehicle, unoccupied, in front of an apartment complex. After about ten minutes, Edison Police Officer Gerry Katula observed a man enter the car and drive away; several other officers immediately pulled over the vehicle. Defendant was removed from the car and arrested at 10:55 a.m. The police searched the vehicle incident to the arrest and found a green shirt on the front seat, a black skull-cap hat in the rear passenger seat, and a blue bag and a handgun on the back passenger-side floor.

Upon learning a suspect was apprehended, Roselle Park Detective Richard Cocca told the victim that the vehicle and suspect had been located in Edison, and he needed to go to the scene in order to make a positive identification. They arrived at the scene at 11:48 a.m. The victim stood in front of the Roselle Park police car, and police removed defendant, who was handcuffed, from the back of the Edison police car. Several policemen were present, some with tactical rifles, as the arrest of defendant had drawn a hostile crowd. When the victim saw defendant, he immediately responded, "that's him." According to Cocca, the victim had "absolutely no doubt" that defendant was the robber, "there was no second-guessing and there was no other communication other than ... that's him."

Suzette Bethea, defendant's sister and the owner of the vehicle, testified that she lived in Edison with defendant and her then eighteen-year-old son James. According to her testimony, at about 10 a.m., she noticed her car was not parked where she left it and her spare key was gone. She believed that her son James may have taken the car without permission, as he had previously done. Since she suspected James might have driven it to the nearby housing complex, his usual hang-out spot, she asked defendant to walk over there and retrieve the car.

Defendant's nephew James testified that he borrowed his mother's car whenever his car was not working. He could not recall if he took the car on the day of the robbery but denied any involvement in the robbery. At the time of defendant's trial, James was serving a prison sentence for a 2008 robbery he committed using his mother's car. He acknowledged that if he admitted to committing the subject robbery, he would be exposed to additional charges and punishment. Prior to the trial, in 2009, the court held a *Wade* hearing, where he testified in accord with his report to the police. He was unable to

2

identify defendant as the robber at that hearing. The court determined that the victim's identification of defendant was admissible at trial. The trial judge heard and granted the State's motion to bar a defense expert's testimony on the subject of eyewitness identification. After a multiday trial, the jury found defendant guilty on the armed robbery and weapons charges. At sentencing, the trial judge merged count one with count two and sentenced defendant to life without parole for first-degree robbery, pursuant to *N.J.S.A.* 2C:43–7.1(a). On the third-degree unlawful possession of a weapon conviction, the judge sentenced defendant to five years with a two-and-a-half year period of parole ineligibility, which was to run concurrently to count one and two.

*State v. Blount*, No. A-2466-11T2, 2014 WL 5782712, at \*1–2 (N.J. Super. Ct. App. Div. Nov. 7, 2014) (footnotes omitted).  The Appellate Division affirmed, *id*. at \*2, and the Supreme Court of New Jersey denied Petitioner's petition for certification. *State v. Blount*, 116 A.3d 1073 (N.J. 2015).

Petitioner filed a petition for post-conviction relief ("PCR"), and the PCR court denied the petition. *State v. Blount*, No. A-1317-16T4, 2018 WL 1902083, at \*1 (N.J. Super. Ct. App. Div. Apr. 23, 2018)  Ultimately, the Appellate Division affirmed on PCR appeal, *id*. at \*5, and the Supreme Court of New Jersey denied Petitioner's PCR petition for certification. *State v. Blount*, 196 A.3d 974 (N.J. 2018).

Petitioner filed the instant Petition in January of 2019. (D.E. 1.)  Respondent filed an Answer opposing relief, (D.E. 5), and Petitioner filed a Reply, (D.E. 7).  Petitioner raises the following claims in this case:

> 1.     The trial judge erred in admitting an irreparably suggestive show-up identification. (D.E. 1, at 4–5.)

> 2.     The trial court erred in excluding expert testimony on eyewitness identification. (*Id*. at 6.)

> 3.     Ineffective assistance of trial and appellate counsel. (*Id*. at 7.)

3

4.      Trial counsel failed to request[,] and appellate counsel failed to advance on direct appeal, a jury instruction on third-party guilt and reverse 404(b) evidence regarding James Bethea and codefendant Cory Yumas. (*Id*. at 8.)

## II.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  AEDPA deference applies even when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S.

362, 412 (2000))).  "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks omitted).  As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply.  First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court."  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*,

392 F.3d 551, 556 (3d Cir. 2004).  This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)).  If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

## III.   ANALYSIS

### A. Evidence Related Claims

#### 1.   The Admission of Show-Up Identification

First, under Ground One, Petitioner contends that the trial judge erred by admitting the victim's "show-up" identification into evidence.  Petitioner emphasizes that the "State conceded [that] the show-up was impermissibly suggestive," and argues that the State failed to show that the identification was otherwise reliable.  (D.E. 1, at 5.)

On habeas review, a district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  The last reasoned state court decision as to this claim is the Appellate Division's opinion on direct appeal.  The Appellate Division denied the claim as follows:

> Defendant first argues that the victim's out-of-court identification was not sufficiently reliable, and therefore, the identification should not have been admitted.  Specifically, defendant points to the State's concession that the procedures used in this case were

6

impermissi[bly] suggestive. Defendant contends the trial court improperly applied the five reliability factors set forth in the *Manson/Madison* test when admitting the identification as reliable. Defendant urges us to hold that the judge should have used the social science studies contained in the Special Master's report prepared for the Supreme Court in *Henderson* to reject the *Manson/Madison* reliability factors. We do not agree.

At the time of defendant's *Wade* hearing and trial, the admissibility of out-of-court identifications was analyzed under the two-step test set forth in *Manson v. Brathwaite,* 432 *U.S.* 98, 114, 97 *S.Ct.* 2243, 2253, 53 *L. Ed.*2d 140, 154 (1977), as adopted by our Supreme Court in *State v. Madison, supra,* 109 *N.J.* 223, 232–33 (1988), *abrogated in part* by *Henderson, supra,* 208 *N.J.* at 285–93. Under the *Manson/Madison* test, the court must first determine whether the identification procedure was "in fact impermissibly suggestive." *Madison, supra,* 109 *N.J.* at 232. The preliminary inquiry must be " 'whether the choice made by the witness represents his own independent recollection or whether it in fact resulted from the suggestive words or conduct of a law enforcement officer.' " *State v. Adams,* 194 *N.J.* 186, 203 (2008) (quoting *State v. Farrow,* 61 *N.J.* 434, 451 (1972)).

If the court finds the procedure was impermissi[bly] suggestive, it must then decide whether the procedure resulted in "a substantial likelihood of irreparable misidentification." *Farrow, supra,* 61 *N.J.* at 450–51. In this prong, the court focuses on whether, despite the impermissibly suggestive procedure, the facts sufficiently prove the identification was reliable. *Adams, supra,* 194 *N.J.* at 203. *See also Manson, supra,* 432 *U.S.* at 114, 97 *S.Ct.* at 2253, 53 *L. Ed.*2d at 154 ("[R]eliability is the linchpin in determining the admissibility of identification testimony....").

The reliability determination is reached by analyzing the totality of the circumstances, including: (1) the witness's opportunity to view the criminal during the commission of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the time of the identification; and (5) the time between the crime and the identification. *Madison, supra,* 109 *N.J.* at 239–40 (citing *Manson, supra,* 432 *U.S.* at 114, 97 *S.Ct.* at 2253, 53 *L. Ed.*2d at 154). "If after the evaluation of those factors the court is convinced that, notwithstanding the suggestive nature of the procedure, the witness's identification is reliable, then the identification may be admitted into evidence." *Adams,*

7

*supra,* 194 *N.J.* at 204 (citing *State v. Herrera,* 187 *N.J.* 493, 503–04, (2006)).

A reviewing court affords substantial deference to a trial court's factual findings. *State v. Locurto,* 157 *N.J.* 463, 472 (1999). "[T]he trial court's findings at the hearing on the admissibility of identification evidence are 'entitled to very considerable weight.' " *Adams, supra,* 194 *N.J.* at 203 (quoting *Farrow, supra,* 61 *N.J.* at 451).

Defendant argues that the facts do not show that the identification was reliable. In particular, defendant contends that the victim only provided a vague description of the robber, at the *Wade* hearing two police officers differed in their testimony as to how far away the victim was when identifying defendant, and a photo taken immediately after the arrest showed that defendant had a mustache and a beard, despite the victim never mentioning facial hair in his description. Defendant further points out that the victim testified the suspect was in the store for only two minutes before he pulled the gun, and then immediately fled. Defendant noted that under *Madison, supra,* 109 *N.J.* at 244, the indicia of reliability is lacking where the witness views the suspect "for no more than three minutes[.]"

The court agreed that the identification was impermissibly suggestive. However, after weighing the totality of the circumstances and applying the five-factor *Manson /Madison* reliability test, the court determined the identification was sufficiently reliable and therefore admissible at trial. The judge reasoned that the victim had the composure to push the panic alarm, run after defendant, get an accurate description of the vehicle, and write down the license plate number. The judge found that these activities strongly suggested that the victim was not likely confused about the identification.

The judge also found indicia of reliability in that the show-up occurred within two hours of the incident, the victim immediately identified defendant without any uncertainty, the distance discrepancy between the victim and defendant at the show-up was minor, and nothing obstructed defendant's view of defendant. Regarding the facial hair inconsistency, the judge noted that defendant's photograph on the day of his arrest did not necessarily show a beard and a mustache; rather, it looked like a few day's growth. Hence, the judge concluded it was insignificant that the victim did not report this as a beard. Accordingly, the judge found,

8

> based on the totality of circumstances, the victim's identification was sufficiently reliable.
>
> Here, the judge properly applied these principles in determining that the out-of-court identification was sufficiently reliable. We must reject defendant's claim that the judge should have determined reliability based upon the social science data in the *Henderson* Special Master's report as *Henderson* made it abundantly clear that the new framework only applied to future cases. *Henderson, supra,* 208 *N.J.* at 302. The judge thoroughly addressed the five *Manson/Madison* reliability factors, noting that the victim's initial description of the suspect, his clothing, bag and gun, and the license plate number were very detailed and matched what was later discovered. Consequently, as the judge's decision is supported by sufficient credible evidence in the record, the admission of the out-of-court identification was an appropriate use of discretion. *See Locurto, supra,* 157 *N.J.* at 470–71; *see also Adams, supra,* 194 *N.J.* at 203.

*Blount*, 2014 WL 5782712, at *2–4 (alterations in original).  Here, the state court's decision was not an unreasonable application of clearly established federal law.

As mentioned by the Appellate Division, the applicable United States Supreme Court case on this issue is *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).  Under the *Manson* test, "a court must first assess whether the eyewitness identification procedure at issue was, under the 'totality of the circumstances,' unnecessarily suggestive."  *Locus v. Johnson*, No. 18-11527, 2021 WL 1749466, at *7–8 (D.N.J. May 4, 2021) (quoting *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 335 (3d Cir. 2016) (McKee, C.J., concurring)).  If a court finds that the circumstances were unnecessarily suggestive, "a court must consider five factors to determine whether the resulting identification is nonetheless reliable." *Id*.  Those factors are:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. These factors are weighed against the corrupting effect of the suggestive identification itself.

*Id*. (internal quotation marks omitted).

With those principles in mind, the Appellate Division agreed with the trial judge that the circumstances of the show up identification were "impermissibly suggestive." *Blount*, 2014 WL 5782712, at *3–4. Consequently, the court had to engage in the second part of the *Manson* test, to determine whether the identification was nevertheless reliable.

As to the first factor, the Appellate Division noted that the trial judge found that the victim had an unobstructed view of Petitioner during the robbery. *Id.* at *4. Under the next factor, the victim's degree of attention, the trial judge reasoned that the victim "had the composure to push the panic alarm, run after [Petitioner], get an accurate description of the vehicle, and write down the license plate number," which "strongly suggested that the victim was not likely confused about the identification." *Id*. As to the third factor, the accuracy of the victim's prior description, the trial judge noted "that the victim's initial description of the suspect, his clothing, bag and gun, and the license plate number were very detailed and matched what was later discovered." *Id*. Next, under the fourth factor, the victim's level of certainty at the confrontation, the victim "immediately identified [Petitioner] without any uncertainty." *Id*. Finally, under the last factor, the length of time between the crime and the confrontation was only two hours. *Id*. Taken together, the trial judge found, and the Appellate Division agreed, that "based on the totality of the circumstances, the victim's identification was sufficiently reliable." *Id*.

In his Reply, Petitioner emphasizes that he had a beard and moustache, but the victim reported that the suspect had no facial hair. (D.E. 7, at 8.) To that point, "the [trial] judge noted that defendant's photograph on the day of his arrest did not necessarily show a beard and a mustache; rather, it looked like a few day[s'] growth. Hence, the judge concluded it was insignificant that the victim did not report this as a beard." *Blount*, 2014 WL 5782712, at *4.

The *Manson* factors indicate that the victim's identification was reliable, notwithstanding any suggestibility inherent in the show-up procedure used in this case. As a result, this Court finds no error in the Appellate Division's decision that the identification was sufficiently reliable and therefore admissible. In turn, that decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on this claim.

### 2. The Exclusion of Expert Testimony

Next, under Ground Two, Petitioner argues that the trial court erred when it excluded Petitioner's expert on eyewitness testimony. Petitioner appears to contend that "[b]ecause identification was the key issue in this case and bec[ause] the sole eyewitness identified defe[ndant] under highly suggestive circumstances," the trial court should have allowed Petitioner to "present Dr. Steven Penrod as [an] expert on identification." (D.E. 1, at 6.) The Petition offers no further elaboration. In his Reply, Petitioner's arguments under Ground Two are difficult to decipher, but he appears to argue that the exclusion violated the New Jersey Rules of Evidence and his Sixth Amendment right to present a defense.[1]

The Appellate Division denied the claim as follows:

> Defendant next contends that the trial judge's decision to exclude defendant's expert on eyewitness testimony deprived defendant of his right to present a complete defense. Defendant maintains that the victim's show-up identification was the crux of the State's case, and the jury's initial report that it could not reach a verdict shows that the jury had doubts about the identification. Defendant submits that in seeking to admit his expert to testify about factors that affect the reliability of identifications, he was simply asking the court to do what has ultimately been required by *Henderson, supra,* 208 *N.J.* at

---

[1] In Petitioner's Reply, under Ground Two, he appears to have strung together random legal phrases and citations. Petitioner does, however, refer to his counseled brief on direct appeal. (D.E. 6-4.) As such, the Court will use that brief to interpret Petitioner's arguments.

11

219, in the form of enhanced jury charges that sensitize the jury to those same factors.

In denying defendant's request for his proposed expert to testify, the judge reasoned that under *N.J.R.E.* 702 expert testimony is unnecessary when the subject can be understood by jurors utilizing common judgment and experience and that credibility determinations are uniquely within the province of the jury. The judge observed that in *State v. Long,* 119 *N.J.* 439, 495–96 (1990), a proffered defense expert in the subject of eyewitness identification was held to be properly excluded as the defendant there failed to establish that the subject was beyond the ken of the average juror.

The judge acknowledged that the Special Master appointed in *Henderson* had issued a report expressing concern about the accuracy of eyewitness identification. He recognized that defendant's expert intended to opine on similar problems of eyewitness identifications in areas such as "time estimation, deleterious effects of stress on memory, stress-induced retrograde amnesia, weapon focus, exposure duration, cross-race identification, suggestion, and memory." The judge found, however, that the Supreme Court had not yet adopted the Special Master's findings, and accordingly, the law set forth in *Long* was controlling.

Moreover, the judge determined that defense counsel would have the opportunity to vigorously cross-examine the witness regarding the identification and the jury would be able to judge the witnesses' credibility on identification. The judge found that defendant's proposed expert's report contained "very little in the way of specifics in regard to this case. It's helpfulness to the jury and general relevance is dubious."

In general, expert testimony may be admitted to "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" *N.J.R.E.* 702. For expert testimony to be admitted it must meet three criteria:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[*State v. Jenewicz,* 193 *N.J.* 440, 454 (2008).]

At the time of the State's motion to exclude defendant's expert, the admissibility of expert testimony on eyewitness identification was guided by *Long, supra,* 119 *N.J.* at 495–96. There, the Supreme Court concluded that the trial court did not abuse its discretion in excluding expert testimony on eyewitness identification because:

> The proffered testimony was not clearly helpful to the jury's assessment of either the reliability of [the witness's] eyewitness identification or the effect of his seeing defendant's photograph in the newspaper. [The witness's] testimony was amply tested on cross-examination, and defendant failed to demonstrate that the subject matter (problems of eyewitness identification) was beyond the ken of the average juror.

[*Id.* at 496 (internal citations omitted) ]

"[A]n abuse-of-discretion standard of review applies to the resultant admissibility determination made by the trial court." *Hisenaj v. Kuehner,* 194 *N.J.* 6, 16 (2008) (citing *Carey v. Lovett,* 132 *N.J.* 44, 64 (1993)).

Contrary to defendant's argument that the judge misconstrued *Long,* the trial judge reasonably relied on its principles in determining that defendant's eyewitness identification expert should be precluded from testifying. The judge fully explained his reasoning and his decision was consistent with the law at the time of defendant's trial. We reject defendant's argument that the judge should have applied the studies relied on in the Special Master's report as the Supreme Court had not yet issued its ruling, which, in any event, was prospective only. Thus, the judge's decision was not "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Flagg v. Essex Cnty. Prosecutor,* 171 *N.J.* 561, 571 (2002) (internal citations omitted). Accordingly, the judge did not abuse his discretion in excluding defendant's expert. *See Hisenaj, supra,* 194 *N.J.* at 16.

*Blount*, 2014 WL 5782712, at *5–6 (alterations in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law. To the extent that Petitioner argues that the trial court erred based on the New Jersey Rules of Evidence, those claims are "not within the province of the [federal habeas court] to

address." *Oliver v. Santiago*, No. 14-1334, 2017 WL 2735409, at *9 (D.N.J. June 23, 2017) (alteration in original) (quoting *Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, at *14 (D.N.J. Sept. 23, 2008)).  Such errors would have been errors of state law, and federal habeas "relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).  Instead, "[t]o rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights." *E.g.*, *Sample v. D'Ilio*, No. 15-5487, 2018 WL 3054676, at *5 (D.N.J. June 20, 2018) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001)).

Petitioner also apparently argues that the exclusion of his expert's testimony violated his due process rights under the Sixth Amendment of the United States Constitution.  The Sixth Amendment guarantees "the criminally accused the right to offer testimony of favorable witnesses and 'to have compulsory process for obtaining witnesses in his favor.'" *United States v. Cruz-Jimenez*, 977 F.2d 95, 100 (3d Cir. 1992) (quoting U.S. Const. Amend. VI); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967). "The Compulsory Process clause protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge." *Gov't of V.I. v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992).  These rights, however, are not absolute. *Id*.  In order to demonstrate a violation of the Compulsory Process clause, a person must show that "(1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." *Cruz-Jimenez*, 977 F.2d at 100; *see also Washington*, 388 U.S. at 23 (finding a violation of the right to

compulsory process where the state "arbitrarily denied [the defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense").

Under the second element, evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 874 (1982); *Holloman v. Metzger*, No. 17-79, 2020 WL 1332947, at *9 (D. Del. Mar. 23, 2020).  A reasonable likelihood is "a probability sufficient to undermine confidence in the outcome." *Mills*, 956 F.2d at 446 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, although the Appellate Division did not directly address the issue through the lens of the Sixth Amendment, that court's findings and decision were not contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner satisfies the first element, because the trial court deprived him of an opportunity to present evidence in his favor--his proposed expert testimony.  As to the second element, the Appellate Division agreed with the trial judge who found that "expert testimony is unnecessary when the subject can be understood by jurors utilizing common judgment and experience and that credibility determinations are uniquely within the province of the jury." *Blount*, 2014 WL 5782712, at *5.  The trial judge also found that the proposed expert report "contained very little in the way of specifics in regard to this case. It[s] helpfulness to the jury and general relevance is dubious." *Id*.; (*see also* D.E. 6-25, at 6 ("There is no indication or proffer that any of these findings are applicable to the facts of this case.").) Additionally, the trial judge concluded that the proposed testimony would "not help the jury enhance their understanding," as it "[did] not in any way add in this case [anything] independently –to clear up anything beyond the average ken of the average juror." (D.E. 6-25, at 7–8.)  In other

words, the state courts effectively concluded that Dr. Penrod's testimony was not "material," *i.e.*, it was not reasonably likely "that the testimony could have affected the judgment of the trier of fact." *Valenzuela*, 458 U.S. at 867. As to the final element, the state court's decision was not "arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." *Cruz-Jimenez*, 977 F.2d at 100. As a result, Petitioner has failed to establish two out of the three elements of a Compulsory Process claim under the Sixth Amendment. Similarly, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

## B.  Ineffective Assistance of Counsel Claims

Petitioner next raises multiple claims of ineffective assistance of counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688–89. Thus, the

16

standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016). The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.* Finally, even if a petitioner can establish both prongs of *Strickland*, a habeas petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

### 1. Ineffective Assistance of Trial and Appellate Counsel in Failing to Pursue a Jury Instruction on the Law of Attempt

First, under Ground Three, Petitioner argues that "[t]rial and appellate counsel failed to pursue the trial court[] [for] not instructing the jury on the law of attempt as [an] element of robbery." (D.E. 1, at 36.) The Petition offers no further elaboration, and Petitioner's Reply is largely incoherent on this point. (D.E. 7, at 14–19.) As a result, the Court once again turns to Petitioner's counseled briefing on direct and PCR appeal to decipher his claims. Additionally, to

17

the extent Petitioner is attempting to raise entirely new claims in his Reply, (D.E. 7, at 14–19), the Court will summarily decline to address those claims.[2]   The Court will only address the jury instruction claim properly raised under Ground Three of the original Petition.

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal.  The Appellate Division denied the claim as follows:

> Although the judge provided the model jury charge on robbery, he failed to heed its reminder that if the robbery were an attempt, the judge should also charge the jury with the model jury charge on attempt. Trial counsel did not object to this omission, and appellate counsel did not raise the issue on direct appeal.
>
> Trial counsel also did not request, and the judge did not provide, two other charges: *Model Jury Charges (Criminal)*, "Proof of Other Crimes, Wrongs, or Acts—Defensive Use (N.J.R.E. 404(b) )" (May 22, 2000); and a charge on third party guilt (approved Mar. 9, 2015). The defense was not only the affirmative alibi supplied by his sister, but also an effort to raise a reasonable doubt of the robber's identity by implying his nephew committed the robbery.
>
> In his written opinion, the PCR judge, who was also the trial judge, rejected these arguments. He said he had "instructed the jury in accordance with the Model Jury Charge for robbery" and even if he

---

[2] A party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *See, e.g.*, *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015) (declining to consider ineffective assistance of counsel claims as to two additional witnesses raised for the first time in a reply brief); *see also McNeil v. Johnson*, No. 18-10003, 2019 WL 3805118, at *1 (D.N.J. Aug. 12, 2019); *Soto v. United States*, No. 04-2108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005), *aff'd*, 313 F. App'x 496 (3d Cir. 2008).

This prohibition applies in habeas matters because "[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an opportunity to address those claims." *McNeil*, 2019 WL 3805118, at *1 (quoting *Judge*, 119 F. Supp. 3d at 284).  "The reason for such a rule is clear: it would be fundamentally unfair to the Government to permit Petitioner to provide the true bases for his claims after the Government has used its only opportunity to respond by answering [petitioner's] barebones [petition]." *Gilbert v. United States*, No. 14-243, 2016 WL 4087274, at *4 (D.N.J. July 28, 2016).  Furthermore, the prohibition is "especially applicable" in situations where, as here, the petitioner "was advised, and certified that he [was] aware, that he was required to raise all of his claims in a single habeas" petition. *Id.*; (*see* D.E. 1, at 12).

had instructed the jury on "attempt, it would not have led to a different verdict, as the jury had already determined that [defendant] had attempted a theft." As to the other jury instructions, the judge noted that defendant called James as a witness and examined him at length about the 2008 robbery that led to his incarceration. The judge determined that the jury had the opportunity to consider James' credibility and compare his physical appearance to that of the robber's description provided by the victim, and counsel's failure to request the charges did not amount to ineffective assistance.

Citing our decisions in *State v. Dehart*, 430 N.J. Super. 108 (App. Div. 2013), and *State v. Gonzalez*, 318 N.J. Super. 527 (App. Div. 1999), defendant argues trial and appellate counsel provided ineffective assistance by failing to object to the omission of instructions on criminal attempt during the charge on robbery and by failing to raise that omission on direct appeal.

In *Dehart*, we reversed a conviction for reasons identical to those in *Gonzalez*. *Dehart*, 430 N.J. Super. at 120. The defendant was charged with a robbery that was alleged to have been committed by a threat of force during an attempted theft. *Id.* at 116–17. The court did not instruct the jury on attempt during its charge on robbery or at any other time during its final instructions. *Id.* at 118. Consistent with our holding in *Gonzalez*, we found plain error because the jury instructions did not define the elements of criminal attempt that were essential to the jury's determination of defendant's guilt on the robbery charge. *Id.* at 120.

However, the Court has said that [i]n the context of a jury charge, plain error requires demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court *that of itself the error possessed a clear capacity to bring about an unjust* result."

[*State v. Burns*, 192 N.J. 312, 341 (2007) (second alteration in original) (emphasis added) (quoting *State v. Jordan*, 147 N.J. 409, 422 (1997) ).]

The allegation of error must be assessed in light of "the totality of the entire charge, not in isolation." *State v. Chapland*, 187 N.J. 275, 289 (2006) (citing *State v. DiFrisco*, 137 N.J. 434, 491 (1994) ). While an erroneous jury charge may be a " 'poor candidate[ ] for rehabilitation' under the plain error theory," *Jordan*, 147 N.J. at 422–23 (quoting *State v. Simon*, 79 N.J. 191, 206 (1979) ), we

nonetheless consider the effect of any error in light "of the overall strength of the State's case." *Chapland*, 187 N.J. at 289.

Our colleagues in *DeHart*, 430 N.J. Super. at 120, and *Gonzalez*, 318 N.J. Super. at 536–37, found plain error in the failure to charge "attempt" despite the strength of the State's cases. However, our colleagues in *State v. Belliard*, 415 N.J. Super. 51 (App. Div. 2010), reached a different result, and we subscribe to their reasoning.

In *Belliard*, the defendant was convicted of first-degree robbery and felony murder. *Id.* at 60. In his appeal, the defendant argued, among other things, the trial court failed to define "attempt" for the jury. *Id.* at 64. However, because there was evidence the defendant had taken a substantial step toward committing a robbery, we found the court's error to be harmless. *Id.* at 72. "Therefore, while the judge's failure to charge the jury with attempt was in error, this error was not sufficient to lead the jury to a result it would not have otherwise reached." *Id.* at 74.

Here, the judge clearly erred by not defining attempt during the jury charge. *See State v. R.B.*, 183 N.J. 308, 325 (2005) ("[M]odel jury charges should be followed and read in their entirety to the jury."). Assuming arguendo trial counsel's failure to object to the charge was evidence of deficient performance, defendant cannot meet the second prong of the *Strickland/Fritz* standard.

The focus of the defense was not whether a robbery occurred, but rather, whether defendant was the perpetrator. The victim described the demand for money that was accompanied by the threat of a handgun. Only the victim's decision to sound the panic alarm thwarted the completion of the theft. There was no dispute that the robber, whoever he was, "purposely" took "a substantial step in a course of conduct planned to culminate in his commission of the crime." N.J.S.A. 2C:5–1(a)(3). Omitting a charge on attempt did not "lead the jury to a result it would not have otherwise reached," *Belliard*, 415 N.J. Super. at 74, and therefore does not "undermine [our] confidence in the outcome" the jury reach. *Pierre*, 223 N.J. at 583. Since appellate counsel has no obligation to raise issues on direct appeal that would not succeed, *see State v. Echols*, 199 N.J. 344, 361 (2009), defendant's IAC claim as to appellate counsel is unavailing.

*Blount*, 2018 WL 1902083, at *2–4 (alterations in original).  With that decision in mind, Petitioner

has not shown that the state court unreasonably applied either of the *Strickland* prongs.

As to the first prong, deficient performance, the Appellate Division agreed that the trial "judge clearly erred by not defining attempt during the jury charge." *Id*. at *3.  Next, as to the second prong, the Appellate Division reasonably concluded that Petitioner failed to establish *Strickland* prejudice.  The court reasoned that the critical issue in the case was the identity of the perpetrator, not whether a robbery had occurred. *Id*. at *4.  In New Jersey, the criminal code defines robbery as follows:

> A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

N.J. Stat. § 2C:15-1(a).  As the Appellate Division noted, it was undisputed that *someone* demanded money from the victim and that the demand "was accompanied by the threat of a handgun." *Blount*, 2018 WL 1902083, at *4.  Petitioner's theory of the case was that someone else had committed the robbery, not that a robbery did not occur. *Id*.

Because the jury rejected Petitioner's theory that someone else had committed the robbery, it would have made no difference to charge the jury on the law of attempt.  As the Appellate Division opined, "[t]here was no dispute that the robber, whoever he was, 'purposely' took 'a substantial step in a course of conduct planned to culminate in his commission of the crime.'" *Id*. (quoting N.J. Stat. § 2C:5–1(a)(3)).  In other words, had the jury received a charge on the law of attempt, the jury would have found Petitioner guilty of both robbery and attempted robbery,

ultimately leading to the same result, through the doctrine of merger. *Id.* ("Omitting a charge on attempt did not "lead the jury to a result it would not have otherwise reached.").  Consequently, the Appellate Division reasonably concluded that Petitioner failed to establish prejudice under *Strickland*.

The Appellate Division properly applied *Strickland* when it held that Petitioner's appellate counsel was not ineffective for failing to raise a meritless claim. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted).

Petitioner is not entitled to habeas relief on this claim.

**2.   Ineffective Assistance of Counsel in Failing to Request a Third-Party Guilt and Reverse 404(b) Jury Charge**

Petitioner next contends that trial counsel was ineffective for failing to request "a jury instruction on third party guilt and reverse 404-B evidence regarding James Bethea and Co-Defendant Cory Yumas." (D.E. 1, at 37.)   Petitioner also argues that appellate counsel was ineffective for failing to raise the issue on direct appeal.   In Petitioner's view, without those instructions, "the jury was not made aware of the fact that [he] was setting forth a legal defense of third-party guilt," and the jury could not properly assess the evidence under New Jersey Rule of Evidence 404(b).

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal.   The Appellate Division denied the claim as follows:

> We also reject defendant's IAC claim premised on trial counsel's failure to request the reverse 404(b) evidence and third party guilt instructions. Once again, the judge erred by not providing the reverse 404(b) evidence charge to the jury. However, assuming arguendo counsel's failure to ask for the charge evidences deficient performance, defendant again fails to establish prejudice under the second prong of the *Strickland/Fritz* standard.

22

As noted, defendant produced James as a witness to advance a theory of third party guilt. *See State v. Weaver*, 219 N.J. 131, 150–51 (2014) (explaining the defensive use of "reverse 404(b)" evidence). The model jury charge on the defensive use of 404(b) evidence does little more than tell the jury it "should consider this evidence, along with all the other evidence in the case, in determining whether or not the State has proven beyond a reasonable doubt that defendant is the person who committed" the crime. *Model Jury Charge (Criminal)*, "Proof of Other Crimes, Wrongs, or Acts—Defensive Use (N.J.R.E. 404(b) )." At other points in the jury charge, the judge repeatedly made clear that the State bore the burden of proof on identification, that defendant had no burden of proof and that the State had to prove beyond a reasonable doubt that defendant committed the charged offenses. The omission of this charge was not prejudicial.

The third party guilt charge provides more guidance to jurors. It states:

> The defendant contends that there is evidence before you indicating that someone other than he or she may have committed the crime or crimes, and that evidence raises a reasonable doubt with respect to the defendant's guilt.

> In this regard, I charge you that a defendant in a criminal case has the right to rely on any evidence produced at trial that has a rational tendency to raise a reasonable doubt with respect to his/her own guilt.

> I have previously charged you with regard to the State's burden of proof, which never shifts to the defendant. The defendant does not have to produce evidence that proves the guilt of another, but may rely on evidence that creates a reasonable doubt. In other words, there is no requirement that this evidence proves or even raises a strong probability that someone other than the defendant committed the crime. *You must decide whether the State has proven the defendant's guilt beyond a reasonable doubt, not whether the other person or persons may have committed the crime(s).*

[ (Emphasis added).]

23

Defense counsel intended to raise a reasonable doubt in jurors' minds as to the identity of the perpetrator through the extensive direct examination of defendant's nephew James. James admitted he was serving a sentence for a 2008 *robbery of a liquor store*, committed less than one year after the instant offense, *while he was driving his mother's car* and while *his co-defendant was armed with a BB gun*. Certainly, the model charge would have properly focused the jurors' attention not on whether James had actually committed the robbery, but rather whether the evidence raised a reasonable doubt that defendant committed the robbery.

However, the failure to request the model charge was not evidence of deficient performance because the model charge was not adopted until 2015, years after this trial. Our research reveals no similar charge existed at the time of this trial. In addition, defendant points to no decision predating the model charge that required the court to provide a similar instruction. Therefore, defendant's IAC claim must fail.

Moreover, while charging the jury on the State's burden to prove identity, the judge specifically told jurors "[d]efendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person." This instruction incorporated the most significant aspect of the model charge as it relates to burden of proof.

*Blount*, 2018 WL 1902083, at *4–5 (alterations in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law. To rise to a constitutional violation, a faulty jury instruction must so infect the entire trial that the resulting conviction violates due process. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004); *Estelle*, 502 U.S. at 71–72. The instruction must be more than erroneous as a petitioner must show that there was a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437. Additionally, courts may not judge the instruction in isolation, but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

24

Turning first to the reverse Rule 404(b) charge, the Appellate Division assumed *arguendo* that the failure to request the charge constituted deficient performance under the first *Strickland* prong. *Blount*, 2018 WL 1902083, at \*4.  As to the prejudice prong, however, the court  explained that the model jury instruction  "does little more than tell the jury it 'should consider this evidence, along with all the other evidence in the case, in determining whether or not the State has proven beyond a reasonable doubt that defendant is the person who committed' the crime." *Id.* (citing New Jersey Model Jury Charge (Criminal), Proof of Other Crimes, Wrongs, or Acts—Defensive Use (N.J.R.E. 404(b).  The Appellate Division reasoned that because the trial judge "[a]t other points in the jury charge, . . . repeatedly made clear that the State bore the burden of proof on identification, that defendant had no burden of proof and that the State had to prove beyond a reasonable doubt that defendant committed the charged offenses,"  the omission of the "charge was not prejudicial." *Id*.

This Court has reviewed the jury instructions in this case as a whole and agrees with the Appellate Division's reasoning. (*See* D.E. 6-38, at 7:22 to 8:8, 8:9 to 9:8, 15:5–19, 16:5–15.)  This Court must presume that the jury followed the trial court's instructions. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Taliaferro v. Balicki*, No. 11-4714, 2013 WL 5539033, at \*17 (D.N.J. Oct. 7, 2013).  Consequently, this Court finds that the Appellate Division reasonably concluded that Petitioner failed to demonstrate *Strickland* prejudice as to his reverse Rule 404(b) claim.  In turn, the Appellate Division properly applied *Strickland*, when it held that Petitioner's appellate counsel was not ineffective for failing to raise a meritless claim. *See Werts*, 228 F.3d at 203.

Next, as to the third-party guilt charge, the Appellate Division held that trial counsel's "failure to request the model charge was not evidence of deficient performance because the model

charge was not adopted until 2015, years after this trial," and that "no similar charge existed at the time of [the] trial." *Blount*, 2018 WL 1902083, at \*5.  Stated differently, trial counsel cannot have performed deficiently for failing to request a model charge if that charge did not exist at the time of trial.   Consequently, the Appellate Division reasonably found that Petitioner failed to demonstrate deficient performance under *Strickland* as to this claim.    As to the prejudice prong, the Appellate Division held that other parts of the jury instructions addressed the substance of the model charge on third-party guilt.  In particular, the trial judge specifically told jurors  that the "[d]efendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person." *Blount*, 2018 WL 1902083, at \*5 (alteration in original) (internal quotation marks omitted); (*see* D.E. 6-38, at 17:8–24).

This Court has reviewed the jury instructions and again agrees with the reasoning of the Appellate Division. *Compare* (D.E. 6-38, at 17:8–24), *with* Model Jury Charge (Criminal),  Third Party Guilt Jury Charge. ("I have previously charged you with regard to the State's burden of proof, which never shifts to the defendant.  The defendant does not have to produce evidence that proves the guilt of another, but may rely on evidence that creates a reasonable doubt.  In other words, there is no requirement that this evidence proves or even raises a strong probability that someone other than the defendant committed the crime.   You must decide whether the State has proven the defendant's guilt beyond a reasonable doubt, not whether the other person or persons may have committed the crime(s).").  As a result, the Appellate Division reasonably held that Petitioner failed to demonstrate prejudice under *Strickland* as to this claim. In turn, the Appellate Division properly applied *Strickland*, when it held that Petitioner's appellate counsel was not ineffective for failing to raise a meritless claim. *See Werts*, 228 F.3d at 203.

Petitioner has failed to show that the Appellate Division unreasonably applied either prong of *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on these claims.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, this Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed above, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate Order follows.


Dated: March 17, 2022

JOHN MICHAEL VAZQUEZ
United States District Judge